# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| NATUZZI AMERICAS, INC., | ) |  |
| --- | --- | --- |
| Plaintiff, | ) |  |
| v. | ) | 1:12CV559 |
| JAN PETROOK, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Defendant Jan Petrook ("Petrook") moves this Court to dismiss or stay this action brought by Plaintiff Natuzzi Americas, Inc. ("Natuzzi") because there is pending litigation involving the same facts in the Ontario, Canada Superior Court of Justice. (Docket Entry 8.) Plaintiff has filed a response to the motion and the matter is ripe for adjudication. For the reasons that follow, the Court will recommend that the motion to stay be granted pending resolution of the parallel proceeding pending in Canada.

## I.    FACTUAL BACKGROUND[1]

Natuzzi, a North Carolina corporation with its principal place of business in High Point, North Carolina, is in the business of designing and selling upholstered household furniture. (Compl. ¶¶ 1, 7, Docket Entry 2.) Petrook, a citizen of Toronto, Ontario, Canada, worked as a sales representative for Natuzzi. According to Natuzzi, Petrook was an independent contractor. Petrook contends that she was employed by Natuzzi. At any rate,

---

[1] Except where noted, these facts are either uncontroverted, taken in the light most favorable to Plaintiff, or have been admitted by the parties in their pleadings.

it is undisputed that Natuzzi and Petrook had a business relationship for 27 years, with Petrook serving as Natuzzi's representative in the Canadian province of Ontario.

According to the Complaint, the parties entered into two agreements in 2001.[2] (Compl. ¶ 11, Docket Entry 2.) The first agreement was a Confidentiality Agreement under which Petrook agreed to maintain the confidentiality of Natuzzi's business information. (*Id.*) Additionally, the parties entered into an "Engagement Agreement," outlining the terms of Petrook's "engagement as an independent contractor" and sales representative for Natuzzi. (*Id.*) In 2009, the parties entered into a second "Engagement Agreement" ("the Agreement") under which Natuzzi engaged Petrook "to be its independent sales representative" and which provided that either party could terminate the arrangement upon written notice to the other party. The Agreement provides that it "shall be governed by the laws of the State of North Carolina applicable to agreements entered into and performed within that state." (Compl., Ex. A, Docket Entry 2-1.) Defendant alleges that she was pressured to sign the Agreement while on a trip to North Carolina, without benefit of legal counsel and for no consideration. (*See* Am. Stmt. of Claim, Ontario Case, Docket Entry 9-2 at 7-8.). Accordingly, Petrook alleges, the Agreement is of no force and effect. (*Id.* at 8.)

According to Defendant, on March 20, 2012, Craig Ruse, a Natuzzi regional manager from the United States, flew to Toronto and met with Petrook in an airport coffee shop, where he informed her that Natuzzi was terminating its relationship with her and that she would receive commission on all of her orders submitted through March 31, 2012. (Ontario Compl. ¶ 18.) On March 25, 2012, Natuzzi's president, Joseph Mussallem, emailed

---

[2] Prior to this date, the parties did not have a written agreement. (*See* Ontario Claim ¶ 5, Def.'s Mem., Ex. B, Docket Entry 9-2.)

2

Petrook's clients in Ontario and "falsely advised them that [she] was resigning as a Natuzzi representative." (*Id.* ¶ 19.) Petrook contends that "under Canadian law, Natuzzi's termination of Ms. Petrook's 27-year employment relationship with only 10 days' notice is illegal and exposes Natuzzi to substantial damages, including punitive damages and other tort damages for bad faith." (Def.'s Mem. in Support of Mot. to Dismiss or Stay at 2, Docket Entry 9.) On April 4, 2012, Petrook sent Natuzzi a demand letter explaining her claims under Canadian law and seeking compensation for her wrongful discharge. (Compl. ¶¶ 34-38, Docket Entry 2.)

On May 7, 2012, Natuzzi filed a Complaint for Declaratory Judgment in Guilford County Superior Court seeking a declaration that Petrook's employment status with Natuzzi is governed by North Carolina law. (*See* Docket Entry 2.) On June 4, 2012, Petrook removed the action to this court. (Docket Entry 1.) A parallel action was filed by Petrook in the Superior Court of Justice in Ontario Canada on or about May 10, 2012 entitled *Petrook v. Natuzzi Americas, Inc.*, No. CV-12-453330 ("Ontario Case"). In the Ontario Case, Petrook seeks damages for wrongful dismissal and bad faith, along with a declaration that the Agreement between the parties is null and void. (*See* Def.'s Mem. Supp. Mot. to Stay, Ex. B, Docket Entry 9-2.)

On July 3, 2013, the Honourable Madam Justice Susan E. Greer, of the Ontario Superior Court of Justice, entered an Order in the Ontario Case. (*See* Ontario Order, Docket Entry 15-1.) In her Order, Justice Greer denied Natuzzi's motion to stay or dismiss Petrook's action in Canada, ruling that "Ontario is the appropriate forum for this employment law case to be heard." (*Id.* at 7.)

3

## II. ANALYSIS

In the state court action, Natuzzi sought a declaration under the North Carolina Declaratory Judgment Act. Since the matter has been removed to this court, however, the present motion must be analyzed under the federal Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201 *et. seq.*; *see Jones v. Sears Roebuck and Co.*, 301 F. App'x. 276, 281 n.12 (4th Cir. 2008) ("Although the State Complaint purported to invoke West Virginia's Declaratory Judgment Act, we apply the federal Declaratory Judgment Act in this proceeding.") Under the Act, a district court may "declare the rights and other legal relations of any interested party seeking such declarations whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act, however, does not provide an independent basis for federal jurisdiction. *City Nat'l Bank v. Edmisten*, 681 F.2d 942, 945 n.6 (4th Cir. 1982). Because there is no mandatory obligation to declare a litigant's rights under the Act, a district court may in its discretion decline to exercise jurisdiction over a declaratory judgment action. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F. 3d 419, 421 (4th Cir. 1998). Indeed, as noted by the United States Supreme Court, "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the right of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

In exercising this discretion, the Fourth Circuit has noted that a declaratory judgment action is appropriate "'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d

4

321, 325 (4th Cir. 1937)). The Declaratory Judgment Act "should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" *Id.* at 256-57 (quoting *Quarles*, 92 F.2d at 325). In addressing a court's discretion to decline to hear declaratory judgment proceedings when parallel state proceedings are underway, the Fourth Circuit has identified the factors to consider as: (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere 'procedural fencing.' *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376-66 (4th Cir. 1994).[3]

This Court is aware of no Fourth Circuit precedent specifically applying or rejecting the *Nautilus* analysis in a case where the parallel proceeding is in a foreign jurisdiction. In *Stout v. Grain Dealers Mut. Ins. Co.*, 307 F.2d 521, 523 (4th Cir. 1962), the court noted "the general rule that a federal court will not entertain a declaratory judgment action when the same issue as that sought to be litigated is then pending in *some other court of competent jurisdiction.*" (emphasis added). *Stout*, however, did not specifically involve a foreign proceeding. In fact, there is a limited body of published caselaw addressing the exercise of a

---

[3] The portion of *Nautilus* that calls for the application of *de novo* review was overruled by the Supreme Court in *Wilton*, 515 U.S. 277 (holding that abuse of discretion standard was appropriate). However, the Fourth Circuit has reaffirmed the applicability of the *Nautilus* factors identified in that case. *See, e.g., Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 355 F. App'x 698, 699 n.1 (4th Cir. 2009) (unpublished) ("[T]he factors articulated which guide the district court's exercise of discretion in a declaratory judgment action remain applicable.").

court's discretion under the Act in the face of a parallel foreign proceeding. While *Wilton* involved a parallel *state* proceeding, other courts have applied its holding regarding the discretion of the district court in the context of a parallel *foreign* proceeding. *See, e.g., Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115, 117 (2d Cir. 1998); *Eastman Kodak Co. v. Kavalin*, 978 F. Supp. 1078, 1089 (S.D. Fla. 1997 (dismissing declaratory judgment action in light of parallel proceedings in Bolivia); *Pexcor Mfg. Co. v. Uponor AB*, 920 F. Supp. 2d 151, 153 (D.D.C. 2013) (court exercised discretionary authority to stay case pending outcome of parallel Canadian litigation); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) (approving the district court's use of a five-factor analysis culled from precedents involving parallel state proceedings).

"Inherent in the power of an Article III court to control its docket is the discretionary power to stay a case pending the outcome of foreign litigation." *Pexcor*, 920 F. Supp. 2d at 154. Courts weighing a stay based on the pendency of foreign litigation have applied a "pragmatic" balancing test considering several factors including: "the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.* (quoting *LG Display Co. v. Obayashi Seikou Co, Ltd.*, 919 F. Supp. 2d 17, 23 (D.D.C. 2013)).

The factors a court must weigh in exercising its discretion to defer to parallel proceedings clearly differ, then, depending upon the nature of the proceeding. This Court is tasked with crafting an analysis which draws from cases involving both motions to stay

6

declaratory judgment actions based upon pendency of state court actions and motions to stay based upon parallel foreign litigation in non-declaratory judgment actions. The analysis from either of these types of actions does not lend itself smoothly to the facts of this case, where a declaratory judgment action, originally filed in state court but properly removed to federal court, is pending at the same time that an action is pending in a foreign jurisdiction. The Fourth Circuit *Nautilus* factors are instructive, but not totally on point. Likewise, the factors identified in *Prexcor* are helpful but also not on all fours with the facts of this case. Moreover, the "virtually unflagging obligation" of a district court to exercise its discretion, as noted by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-20 (1976), is tempered somewhat in the declaratory judgment action context, as articulated by the same court in *Wilton*. "In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006).

In considering factors from varied cases on the issue of abstention, whatever its form, and applying them to the facts of this case, this Court finds that the balance is tipped towards granting a stay of this action pending the outcome of the Ontario litigation.

The first consideration for this court is to determine if this action and the Ontario case are parallel. "Suits are considered parallel if substantially the same parties litigate substantially the same issues in different forums." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000)(quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946

F.2d 1072, 1072 (4th Cir. 1991)).  Here, the parties are identical in both actions and both cases stem from the same facts.  The declaratory judgment action seeks to have this Court find that the Agreement is enforceable and binding on the parties, and that North Carolina law applies to the Agreement thus finding that Petrook was properly terminated.  In the Ontario case, Petrook claims damages under Canadian law for wrongful termination and bad faith along with a declaration that the Agreement is null and void.  It appears clear that the issues in both cases are, if not identical, at least very similar.  Thus, this court finds that the two actions are parallel.

Additionally, the dispute between these parties can be efficiently, and completely, resolved in the Canadian court.  The declaration sought by Natuzzi primarily involves whether or not the Agreement is enforceable and whether North Carolina law applies.  There are other issues which will necessarily be addressed by the Canadian court.  Judicial efficiency and economy dictate that a complete settlement of the dispute can only take place in the Canadian court.  *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) (directing courts to analyze whether "resolution of the declaratory action will settle all aspects of the legal controversy.")  Indeed, Natuzzi seems to concede as much in its brief: "It makes practical sense for this Court to resolve the parties' contractual rights, the governing law, and Defendant's status before the parties go to the expense of lititgating non-contract claims."  (Pl's Br. at 19, Docket Entry 12.)  Moreover, a review of the most recent order entered in the Ontario action suggests that those issues of contractual rights, applicable law and Petrook's employment status are already being addressed in the parallel Canadian proceeding.  (*See* Ontario Order at 5-8.)  As noted by the Ontario court, the two contracts at

issue here are not complex documents and, if North Carolina law is found to apply, "Ontario courts are able to apply the law of North Carolina to contract interpretation, in that regard in Ontario." (*Id.* at 8.)

As noted by Plaintiff, this declaratory judgment action was actually filed first, a fact which ordinarily might weigh against a stay. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594-95 (4th Cir. 2004) (holding that when similar lawsuits are filed in multiple forums, the first-filed suit should have priority). One exception to the "first-filed" rule suggests that courts should decline jurisdiction over declaratory judgment actions filed "for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction." *Quarles*, 92 F.2d at 324. Plaintiff here clearly brought this declaratory judgment action immediately after receiving, and in response to, Petrook's demand letter. There was little doubt that Defendant would file an action in Ontario to protect her rights under Canadian law. As stated by a district court in the Western District of North Carolina recently:

> The Court . . . may consider the pendency of a subsequently filed action in 'special circumstances.' The 'special circumstances to be considered when deviating from the 'first to file' rule exist when: (1) the first-filed action is for a declaratory judgment because 'such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief[,]' or (2) the party that filed the first action was on notice that a lawsuit was imminent."

*Tucker Materials, Inc. v. Safesound Acoustics, Inc.*, No. 1:12-CV-247-MR-DLH, 2013 WL 4782394 at *3 (W.D.N.C. Sept. 6, 2013). As in *Tucker*, it appears that Natuzzi, having received the demand letter from Petrook's counsel, "concluded a good offense is the best defense and seized the role of plaintiff requesting a declaration of non-liability." Indeed, by bringing the declaratory judgment action, Natuzzi "effectively reversed the traditional roles

9

of the parties as well as the traditional procedures for adjudicating civil claims." *Id.* at * 8. Natuzzi clearly filed an anticipatory lawsuit to obtain what it views as a more favorable forum. Natuzzi's race to the courthouse weighs strongly in favor of a finding of procedural fencing.

Natuzzi argues that North Carolina "has a strong interest in the enforceability of contracts entered into by its citizens with citizens of foreign nations." (Pl.'s Br. at 13, Docket Entry 12.) Without downplaying the significance of this interest, it also must be noted that Canada has an interest protecting its workers and enforcing its employment laws as well. Petrook is a Canadian citizen who was hired by Natuzzi to work in Canada, and who, for 27 years, performed her responsibilities almost completely in Canada, was compensated in Canada, and, in fact, was terminated in Canada. North Carolina law is implicated only by virtue of a choice of law provision in a contract which Petrook alleges to be of no effect. North Carolina law on contract interpretation and employment is not overly intricate or complex. Should the contract be found to be binding, a Canadian court has the ability to interpret and apply North Carolina law.

Finally, although this case does not involve a motion to dismiss based on the convenience of the parties, it must be noted that there are witnesses in both Canada and North Carolina. The physical evidence would consist primarily of documents that could be examined in either location. The public interests, however, strongly argue for this matter to be decided in Ontario. Petrook's tort claim in the Ontario case is based on statutory and common law claims implicating matters of Canadian public policy that are broader than the

contract claims between these parties. As such, this court should defer to the action pending in the Ontario Superior Court of Justice.

## III. CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that the motion of Defendant Petrook to stay this declaratory judgment action (Docket Entry 8) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
December 16, 2013